**ORAL ARGUMENT NOT YET SCHEDULED**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| AMERICAN PETROLEUM INSTITUTE, et al., ) | |
| Petitioners, ) | |
| v. ) | Case No. 08-1277 |
| ) | (and consolidated cases) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ) | |
| Respondent. ) | |

**STATUS REPORT**

Respondent United States Environmental Protection Agency ("EPA") hereby provides a status report in Cases 08-1279 and 08-1281, as ordered by this Court on March 11, 2011.

1.      On August 21 and August 25, 2008, twenty-one petitioners filed four separate petitions for review of an EPA final rule titled "Standards of Performance for Petroleum Refineries; Final Rule," published at 73 Fed. Reg. 35,838 (June 24, 2008) ("Final Rule"). The Final Rule, promulgated under Section 111 of the Clean Air Act, 42 U.S.C. § 7411, sets new source performance standards ("NSPS") that limit the emission of air pollutants from petroleum refineries. The Court has consolidated these four petitions for review into the above-captioned case.

1

2.      In addition to the petitions for review that are pending before this
Court, the petitioners in three of those cases filed petitions for administrative
reconsideration with EPA pursuant to Clean Air Act Section 307(d)(7)(B), 42
U.S.C. § 7607(d)(7)(B). EPA granted reconsideration with respect to some of the
issues raised in those petitions. *See* "Standards of Performance for Petroleum
Refineries," 73 Fed. Reg. 55,751 (Sept. 26, 2008). EPA subsequently granted
reconsideration of all remaining issues that were raised in the petitions for
administrative reconsideration, by letter to counsel for those petitioners sent on
December 29, 2009. EPA moved that this Court hold this case in abeyance while
EPA conducted the process of administrative reconsideration of the Final Rule.  By
various orders of this Court, most recently on March 11, 2011, this case has been
held in abeyance since April 1, 2009.

3.      The issues raised in the petitions for reconsideration fall generally into
two categories: issues raised by petitioner states and environmental organizations
("Environmental Petitioners"), and issues raised by petitioners representing the
industry that is subject to the NSPS ("Industry Petitioners"). This Status Report
concerns the status of certain issues raised by Environmental Petitioners in Cases
08-1279 and 08-1281. In its Order of March 11, 2011, this Court ordered EPA to
provide reports on the status of those issues every 90 days, starting on March 11,
2011.

4.      On March 2, 2011, EPA notified Environmental Petitioners of its final consent to a Settlement Agreement resolving the issues that those Petitioners had raised in this case. Pursuant to the Settlement Agreement, EPA agreed to sign a proposed rule by December 10, 2011 (the "Proposed Rule").

5.      EPA held five listening sessions to gain information and feedback from stakeholders and the public regarding petroleum refineries. Each listening session featured a facilitated round table discussion among stakeholder representatives who were identified for their expertise in the Clean Air Act standard-setting process. There was also a short period of time at the end of each session for the public to provide comments. In addition, EPA accepted the public's written comments stemming from the listening sessions.

6.      EPA also issued an information collection request to petroleum refineries, and analyzed the information received. For example, EPA's work included reviewing and compiling information on particulate matter ("PM") and nitrous oxides ("NO$_X$") received in more than 200 test reports submitted as part of the first response phase of the information collection request. EPA also conducted telephone and email follow-up on this information to better understand and clarify the information submitted to examine options for reducing PM and NO$_X$ emissions from catalytic cracking units at refineries.

3

7.    EPA convened a Small Business Advocacy Review Panel to provide outreach to, and collect advice and recommendations from, small businesses, small governments, and small not-for-profit organizations. The Panel outreach meeting took place on August 18, 2011.

8.    EPA also concluded the external peer review regarding refinery flare performance and made available to the public the report that went to the review panel, the charge questions to the review panel, and the peer review panel responses.

9.    On June 1, 2012, EPA signed a final rule addressing issues raised by the Environmental Petitioners in their petition for reconsideration regarding flares and process heaters.

10.    EPA developed a draft proposal package to address the risk and technology review ("RTR") for the Refinery sector, which includes the RTR review of 40 CFR Part 63, Subpart UUU. On September 4, 2012, the proposal package was sent to OMB to begin the interagency review process. However, on March 13, 2013, the proposal package was withdrawn from OMB so that EPA could address in that proposal package issues raised in the litigation discussed in Paragraph 11.

11.    On September 27, 2012, several groups filed a lawsuit against EPA to compel EPA "to perform nondiscretionary duties required by Section 112(f) of the

Clean Air Act, 42 U.S.C. § 7412(f)(2), and Section 112(d)(6) of the Clean Air Act,

42 U.S.C. § 7412(d)(6)." Complaint for Declaratory and Injunctive Relief, p. 2, *Air*

*Alliance Houston et al. v. Jackson*, Case 1:13-cv-01607 (D.D.C.) ("Deadline

Lawsuit"). One of the Environmental Petitioners in this litigation, Environmental

Integrity Project, is also a plaintiff in the Deadline Lawsuit. The Deadline Lawsuit

involves two EPA regulations, 40 CFR Part 63, Subpart CC and Subpart UUU.  As

mentioned above, Subpart UUU is also included in the Settlement Agreement

described in Paragraph 4 and addressed in the proposal package described in

Paragraph 10. EPA and plaintiffs completed settlement discussions regarding the

Deadline Lawsuit and, pursuant to Section 113(g) of the Clean Air Act, EPA

published notice of the proposed Consent Decree in the Federal Register for public

notice and comment. 78 Fed. Reg. 51,186 (Aug. 20, 2013). The parties filed a

"Joint Motion to Enter Consent Decree" on January 13, 2014. The Court granted

the motion and signed the Consent Decree on February 4, 2014. The Consent

Decree includes deadlines by which EPA will take certain actions regarding

Subpart UUU (discussed in Paragraphs 10 and 11 above) and refinery flare

performance (discussed in Paragraph 8 above). A proposed rule was signed on May

15, 2014. *See* "Petroleum Refinery Sector Risk and Technology Review and New

Source Performance Standards; Proposed Rule," 79 Fed. Reg. 36,880 (June 30,

2014).

12.     On September 29, 2015, EPA signed the final version of that rule, "Petroleum Refinery Sector Risk and Technology Review and New Source Performance Standards," EPA-HQ-OAR-2010-0682, which was published in the Federal Register on December 1, 2015 (80 Fed. Reg. 75,178).

13.     Since that date, EPA also completed a technical correction to the New Source Performance Standard for petroleum refineries. The proposed, non-substantive change was published in the Federal Register on February 9, 2016, 81 Fed. Reg. 6814, and was finalized on July 13, 2016. *See* "National Emission Standards for Hazardous Air Pollutant Emissions: Petroleum Refinery Sector Amendments," EPA-HQ-OAR-2010-0682, 81 Fed. Reg. 45,232 (July 13, 2016).

14.     EPA continues to assess the issues in this case and the associated Settlement Agreement described in Paragraph 4. This effort justifies the continued abeyance status of Cases 08-1279 and 08-1281.

Respectfully submitted,

*/s/ Alex Hardee*
ALEX HARDEE
U.S. Department of Justice
Environment and Natural Resources
 Division
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
202-514-2398
alex.hardee@usdoj.gov

6

## CERTIFICATE OF SERVICE

On November 14, 2025, I filed the foregoing using the Court's CM/ECF system, which will electronically serve all counsel of record registered to use the CM/ECF system.

*/s/ Alex Hardee*